(C. D. 1416)

INTERNATIONAL GRANITE & MARBLE CORP. J. M. RODGERS CO. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 15, 1952)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiffs.

*Charles J. Wagner*, Acting Assistant Attorney General (*Jerome Vale, Richard E. FitzGibbon*, and *John J. McDermott*, special attorneys), for the defendant.

*Lamb & Lerch* (*John G. Lerch* of counsel) as *amicus curiae.*

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The plaintiffs herein entered at the port of New York certain merchandise described on the invoice as "Rough sawn slabs Rosered Granite." Duty was assessed thereon at the rate of 30 per centum ad valorem under the provision in paragraph 234 (a) of the Tariff Act of 1930, as modified by the trade agreement with Finland, T. D. 48554, for—

Granite suitable for use as monumental, paving, or building stone, not specially provided for:

Hewn, dressed, pointed, pitched, lined, or polished, or otherwise manufactured * * *.

By its protest herein the plaintiffs claim the said merchandise to be properly dutiable at the rate of 12½ per centum ad valorem under the provision in the same paragraph, as modified by the said trade agreement, for—

Granite suitable for use as monumental, paving, or building stone, not specially provided for:

* * * * * * *

Unmanufactured, or not dressed, pointed, pitched, lined, hewn, or polished * * *.

There is no question that the merchandise involved is, in fact, granite suitable for use as monumental, paving, or building stone, and the sole question appears to be whether it shall take classification as such granite "manufactured" or "unmanufactured."

The method of production of the granite at bar is likewise not in dispute. Large, rough blocks of granite were quarried in Sweden. These were sent to Belgium where each was placed under a gang saw which sawed the block into slabs, approximately ⅞ths to 1 inch thick. The slabs are the imported merchandise and their condition is represented by plaintiff's illustrative exhibit 1, which exhibits two fairly smooth,

sawn faces, and rough, irregular edges. According to the record, a gang saw consists of saw blades in a steel frame, which, either by swinging or by straight operation, and in conjunction with sand under pressure, do the sawing.

The plaintiffs rely upon the decision of this court in the case of *C. J. Tower & Sons* v. *United States*, 24 Cust. Ct. 353, Abstract 53963, involving sawed travertine stone slabs which were produced in the same manner, i. e., by gang sawing of large quarried blocks, as were the sawed granite slabs here in issue. The sawed travertine stone slabs there involved were held to be properly classified under the provision in paragraph 234 (b) of the Tariff Act of 1930 for—

Travertine stone, unmanufactured, or not dressed, hewn, or polished, * * *,

rather than under the provision in paragraph 234 (c) of the same paragraph for—

* * * stone suitable for use as monumental or building stone * * *, not specially provided for, hewn, dressed, or polished, or otherwise manufactured, * * *.

Much of the evidence offered in the case at bar had to do with hewing, dressing, pointing, pitching, and lining operations. According to the record, these are hand operations, and the first of them, hewing, appears to be related to the cutting of stone to shape or desired dimensions, while the remaining operations have to do with the placing of a desired surface or finish upon stone. There is no question but that the granite slabs in question were not hewn, dressed, pointed, pitched, or lined, but it is claimed on the part of the defendant that the gang-sawing operation produced a finish upon two surfaces of the granite equal to that which would have been obtained had all or some of the processes of hewing, dressing, pointing, pitching, lining, or polishing been performed on the granite. It is, therefore, contended on the part of the defendant that the granite was "otherwise manufactured," and consequently dutiable as assessed.

Upon motion of counsel for the plaintiffs the record in the case of *C. J. Tower & Sons* v. *United States, supra,* was incorporated as part of the record herein. It is manifest from a reading of that record and comparing the same with the remainder of the evidence introduced in the case at bar that a situation existed in connection with the sawn surfaces of the travertine slabs which was different from that which obtained in connection with the sawn surfaces of the granite slabs at bar. It clearly appears that the sawn surfaces of the travertine slabs involved in the *Tower* case were not finished in any degree or usable in their imported condition and that the said surfaces required finishing operations, to wit, rubbing, honing, or polishing, or a combination thereof, before they could be used in any application.

There is, however, ample competent evidence in the case at bar that, so far as the sawn surfaces of the granite slabs in issue were concerned, they were usable in their imported condition—in other

words, that the process of sawing had placed upon the slabs of granite two finished or partly finished surfaces and that the slabs, for use in certain fairly common applications, required no further processing save cutting the edges to size. Further operations upon the sawn surfaces, such as polishing, it appears would be required only if such a more advanced surface was desired by the user, but it was not necessary to the use of the granite in other applications.

It would appear from the record as a whole that the process of gang sawing travertine stone into slabs does not produce a cutting or a finish comparable to the result which obtains when granite is gang-sawed into slabs. This may be due to the fact that travertine stone is a much softer stone than granite (Tr. p. 26), and by its nature requires different treatment. Whatever the reason, however, we do not consider the decision in the *Tower* case to be applicable to or controlling in the determination of the issues in the case at bar.

It was established herein that in the process of advancing granite from its crude state to the condition in which it will ultimately be used, it is necessary (1) to cut to size or shape, and (2) to finish the surface where desired. There is no question but that as imported the edges of the granite slabs in the case at bar had not been cut to size or shape, but it would appear that the sawing of the two faces of the slabs to within ⅛ inch of size, as indicated in the record, constituted the equivalent of hewing so far as the faces were concerned. Hewing being a hand-tooled operation, it would appear to be doubtful that the faces could have been brought as close to size by such hand operation as they were by the gang-sawing operation, so that it would appear that the gang sawing was superior, if not equivalent to hewing.

Moreover, it was further established that the surface of granite may be finished to various degrees of evenness or smoothness, as desired, from rough to polished. Pointing and dressing are two hand-tooled operations used to bring a rough granite surface to an even finish whereby it may be used in that condition or further advanced by polishing. It clearly appears that the gang-sawing operation dispensed with the need of the pointing and dressing operations and produced a finish ready for use or for polishing, as desired.

We are of the opinion that an operation upon granite which produces or brings about a result which is equal or superior to the named operations of hewing, pointing, and dressing is embraced by the statutory phrase "otherwise manufactured." In *J. T. Steeb & Co., Inc.* v. *United States*, 16 Cust. Ct. 205, Abstract 50810, relating to blocks of granite which had been split to rough dimensions, it was said:

The uncontradicted proof emphasizes that the statutory terms, "hewn," "dressed," "pointed," "pitched," "lined," and "polished," relate to operations that dedicate granite to a definite size, shape, and condition. All are processes associated directly with a definite advancement of material toward an ultimate

article of commerce. The correlated series of specific statutory terms impart to their succeeding generic phrase, "or otherwise manufactured," a restriction, limiting the scope thereof to only such processes as are analogous with those specifically mentioned.

So in the case at bar, the sawing operation corresponded to hewing, pointing, and dressing operations and brought the slabs within the designation "otherwise manufactured." This accords with the result in the cases of *C. J. Tower & Sons* v. *United States*, 36 Treas. Dec. 692, Abstract 43211, and *Geo. S. Bush & Co., Inc.* v. *United States*, 10 Cust. Ct. 383, Abstract 47965, both on the subject of sawed granite.

Judgment will therefore issue overruling the protest claim accordingly.