**No. 58391.**—Bruce Marble & Granite Works *v.* United States, protest 161223-K (New York).

MOLLISON, Judge:   The merchandise the subject of this protest is described on the invoice as "7 Red Granite Blocks—Rough with two sawn faces on each

block." It was assessed with duty at the rate of 30 percent ad valorem under the provision in paragraph 234 (a) of the Tariff Act of 1930, as modified by the trade agreement with Finland, T. D. 48554, reading as follows:

Granite suitable for use as monumental, paving, or building stone, not specially provided for:
> Hewn, dressed, pointed, pitched, lined, or polished, or otherwise manufactured * * *.

The protest claim is for duty at the rate of 12½ cents per cubic foot under the provision in the said paragraph 234 (a), as modified, *supra*, reading:

Granite suitable for use as monumental, paving, or building stone, not specially provided for:
> *        *        *        *        *        *        *
> Unmanufactured, or not dressed, pointed, pitched, lined, hewn, or polished.

It is the plaintiff's contention that prior to importation nothing had been done to the granite here involved other than the application of a process or processes for the purpose of getting the material out of or away from its state as found in nature, i. e., from the quarry, and of putting it into condition where it became the unmanufactured granite of commerce. It is a well-settled principle of law in the interpretation of tariff statutes relating to manufactured and unmanufactured articles that processes such as that described are not considered to be manufacturing processes, and the articles involved are not manufactured articles in a tariff sense, even when, as an incident to such processes, the article may be advanced in value or condition over its state as found in nature. *Hartranft* v. *Wiegmann et al.*, 121 U. S. 609, 30 L. ed. 1012. In the brief filed on behalf of the defendant, the correctness of the principle in a proper application is not questioned.

It is the defendant's contention, however, that the plaintiff has failed to establish in this case that the process or processes which brought the involved granite into its imported condition where merely such as were necessary to get the raw material by itself as an article of commerce, and affirmatively contends that such process or processes (1) resulted in two sawn faces on each block, which faces were of a smoothness which was the equivalent of one or more of the named processes which would take the material out of the unmanufactured class, (2) included the process of lining, another of the named processes, and (3) had reduced the quarried granite to specific size and shape and dedicated it to the manufacture of a specific memorial or monument. For any and all of these reasons, the defendant contends that the merchandise responds to the tariff designation "manufactured."

At the outset, we are confronted with a vital question of fact as to the actual condition of the merchandise upon importation. There is a wide and irreconcilable difference between the statements of the only two witnesses who were called to testify who had actually seen the merchandise upon its importation. Plaintiff's witness, Robert L. Bruce, sales manager and assistant production supervisor of the importer, testified that the granite was ordered in certain sizes of length, height, and thickness which would allow overage enough to make a finished memorial a certain size smaller. The gist of his testimony is that after being taken out of the quarry the merchandise was no further advanced by any sawing or other process applied to it than to be rough-shaped or squared for the purpose of facilitating its shipment to the United States.

With reference to the sawn faces, the witness produced a piece of granite bearing pronounced ridges on one surface, which he identified as saw marks left by the saw during the sawing process. While the piece produced by the witness was admittedly not from the importation, he stated that the imported blocks or slabs bore saw marks equally as distinct, and the piece was received in evidence without objection as plaintiff's exhibit 1. Plaintiff's exhibit 1 shows very distinct

ridges and grooves upon its sawn surface, the difference between the ridges and grooves being about one-eighth of an inch, producing a rather rough surface.

Witness Bruce stated that he found upon importation that none of the processes of hewing, dressing, pointing, pitching, lining, or polishing had been applied to the granite in issue.

Defendant's witness John F. Mitchell, a customs examiner who had examined the merchandise for appraisement and classification purposes upon importation, stated that plaintiff's exhibit 1 was not a good illustration of the imported granite; that the ridged effect of the exhibit was not typical of the sawed faces of the imported merchandise, which he described as "smoothly sawed."

This witness had been the customs examiner who had examined for customs purposes the merchandise in the case of *International Granite & Marble Corp.* and *J. M. Rodgers Co.* v. *United States*, decided May 15, 1952, and reported in 28 Cust. Ct. 245, C. D. 1416. He testified that the sawed surfaces of the imported granite in the present case were similar and comparable to the sawed surfaces of the granite in the *International Granite & Marble Corp. et al.* case, and the record in that case was, upon motion of counsel for the defendant and over the objection of counsel for the plaintiff, incorporated as part of the record herein.

In the incorporated case, it was established that the sawing process had produced two faces on each slab which were in cutting and finish the equivalent of or superior to those which could be obtained by hewing, dressing, or pointing, and it was there held—

\* \* \* that an operation upon granite which produces or brings about a result which is equal or superior to the named operations of hewing, pointing, and dressing is embraced by the statutory phrase "otherwise manufactured."

In our decision in the cited and incorporated case, we referred to our decision in the case of *J. T. Steeb & Co., Inc.* v. *United States*, 16 Cust. Ct. 205, Abstract 50810, wherein it was held that the provision for "Granite \* \* \* otherwise manufactured" must be read in connection with the correlated series of specific terms mentioned in the same provision, namely, "Hewn, dressed, pointed, pitched, lined, or polished." We concluded that an operation, such as sawing, which produced a result equal or superior to any or some of the named operations was embraced by the statutory phrase "otherwise manufactured." While plaintiff's witness herein specifically stated that none of the named operations had been performed upon the imported granite, it was not brought out through the said witness whether, as the result of the sawing operation which had been performed abroad, the merchandise as imported was in a condition equivalent or superior to granite which had been subjected to any of the named operations.

On the other hand, defendant's witness, Mitchell, who had seen both the granite here involved and that the subject of decision in the *International Granite & Marble Corp. et al.* case, the record in which was incorporated as part of the record herein, stated that the sawed surfaces of the imported material in both cases were "similar" and "comparable."

On the question of whether the imported granite had been lined, this witness controverted the testimony of plaintiff's witness that that operation had not been applied to the granite prior to importation. While a considerable portion of the record is taken up with a discussion of what the lining operation is, we are of the opinion that decision in this case need not rest upon that phase of the issue. We are satisfied that a preponderance in weight of the evidence on the question of the nature and effect of the sawing process which had been applied to the merchandise favors the contention of the defendant, and on the record presented we overrule the protest claim.

Judgment will issue accordingly.