(C. D. 1733)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 9, 1955)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Alfred A. Taylor, Jr., Joseph E. Weil*, and *William J. Vitale*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: Paragraph 234 (c) of the Tariff Act of 1930, as modified by the Presidential proclamation carrying out the Annecy

Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52476, imposes a duty of 25 per centum ad valorem on limestone suitable for use as monumental or building stone, when "hewn, dressed, or polished, or otherwise manufactured," and upon stone of such description when "unmanufactured, or not dressed, hewn, or polished" a duty of 7½ cents per cubic foot.

The merchandise at bar consists of limestone suitable for use as monumental or building stone, imported from Canada, which the collector of customs at the port of entry classified under the description first above quoted and took duty upon accordingly. The plaintiff, by its protest, contends that classification and duty should have been under the latter provision.

There is no question but that the merchandise was brought into its imported condition solely by the following means: The limestone was quarried by a method known as "wedging," which resulted in large rectangular blocks of 10 to 15 tons in weight, about 100 cubic feet in content, and measuring approximately 5 feet in length, 4 feet wide, and 5 feet high. These large blocks were then taken to a sawmill where they were sawn, by means of gang saws, into slabs.

The record indicates that the large blocks are sawn into standard stock thicknesses of 2⅜, 3, 4, 5, 5¼, 5½, 6, 7, and 8 inches, and that effort is made also to keep stock slabs 9, 10, 11, and 12 inches thick, although these may be on special order.

It appears from the record that when an order for limestone, such as the order which gave rise to the instant importation, is received by the producer in Canada, the order specifies the dimensions the stone will have when it is finished and ready for use in monumental or building work.

In filling such an order, the producer selects a slab of a thickness from one-fourth to three-sixteenths of an inch greater than the finished dimensions, that is to say, the thickness between the two sawn surfaces will be one-fourth to three-sixteenths of an inch greater than called for. The length and width dimensions are obtained by drilling a series of holes in the slab and inserting wedges, which are then tapped until a break or split is obtained in the desired dimensions. The length and width dimensions obtained in this fashion are some 2 to 3 inches in excess of those called for by the order.

According to the evidence offered on behalf of the plaintiff, the whole purpose of the operations above detailed is to supply the purchaser with material sufficient for the latter to produce the desired finished piece with a minimum of waste and with a minimum of expense for shipping costs. For this reason, the evidence indicates that the pieces shipped in response to an order do not necessarily total the number of individual pieces ordered. If it happens that one slab can be furnished which will supply material for two units of finished ma-

terial, the single slab is shipped. It further appears that none of the surfaces of the pieces produced by the foregoing operations, i. e., gang sawing or drilling holes and tapping wedges, are usable in the finished piece without further operations, generally with machine or power tools, being performed on them.

It is, of course, apparent that the competition in this case is between the tariff terms "hewn, dressed, or polished, or otherwise manufactured," and "unmanufactured, or not dressed, hewn, or polished." The plaintiff herein offered evidence, which was not contradicted by the defendant, to the effect that hewing refers to an operation performed by hand with a tool known as an "az." The evidence indicates that no such work was done on any of the limestone here involved. Further evidence was offered to the effect that dressing, in relation to stone, refers to working the stone to a specified finish and accurate dimensions. It appears that the limestone at bar was not worked to a specified finish and was not worked to accurate dimensions, but only to approximate dimensions. Lastly, evidence was offered to the effect that polishing, with relation to stone, means working the surface to a smooth and glossy finish. This was not done on the stone at bar.

It follows, therefore, that if the limestone at bar is to be held to be properly classified under the provision for limestone "hewn, dressed, or polished, or otherwise manufactured," it must be for the reason that, in its imported condition, it responds to the term "or otherwise manufactured."

That term, in the case of *J. T. Steeb & Co., Inc.* v. *United States*, 16 Cust. Ct. 205, Abstract 50810, involving a similar statutory provision with respect to granite, was held to be limited in scope to processes which are analogous with those specifically mentioned, i. e., hewing, dressing, and polishing, which, it was said, dedicate the stone "to a definite size, shape, and condition."

The *Steeb* case, incidentally, involved so-called "rough dimension blocks," each piece of which, although obtained by means other than gang-sawing and hole-and-tapped-wedge operations, was described by the court as "large enough to be finished to the dimensions set forth on the invoice, which are representative of the desired completed article." This description aptly characterizes the merchandise at bar.

We are of the opinion that none of the operations performed on the limestone here involved dedicated it to a *definite* size, shape, or condition. In our view, the operations performed were only such as would produce pieces of limestone material upon which hewing, dressing, polishing, or analogous manufacturing operations could be performed, which would dedicate the material to definite size, shape, and condition.

Our holding in this case is consistent with that in the case of *C. J. Tower & Sons* v. *United States*, 24 Cust. Ct. 353, Abstract 53963, involving sawn travertine stone slabs, wherein we reached the following factual and legal conclusions:

Applying the foregoing reasoning to the situation at bar, it would appear that while it is true that the gang sawing of the quarried blocks into the imported slabs advanced the travertine by serving partially to fit it for its ultimate use, it nevertheless still left it only rough material upon which the operations which would dedicate it to definite size, shape, and condition were to be performed. The slabs, although sawn, were in no further advanced condition than were the rough granite blocks involved in the *Steeb* case, and for the same reasons were "unmanufactured." See also in this connection *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T. D. 40169, wherein it was held that the cutting of amberoid into general shapes suitable for manufacture into pipe stems and other articles did not remove it from classification as "amberoid, unmanufactured."

The case at bar is distinguished from the case of *International Granite & Marble Corp.* and *J. M. Rodgers Co.* v. *United States*, 28 Cust. Ct. 245, C. D. 1416, involving gang-sawed granite slabs, inasmuch as the evidence in that case showed that the gang sawing produced on the two faces of each slab a cutting and finish the equivalent of or superior to those which could be obtained by hewing and by dressing and pointing the said faces, and which left the stone ready for use, if desired, without further operations on those two faces. The same is true of the case of *Bruce Marble & Granite Works* v. *United States*, 33 Cust. Ct. 362, Abstract 58391, the evidence in which case established factual conditions which paralleled those of the *International*, etc., case.

On the record before us, the protest claim for duty at the rate of 7½ cents per cubic foot under the provisions of paragraph 234 (c), as modified, *supra*, is sustained. Judgment will issue accordingly.