C.D. 4356

SELECTILE Co., INC. } v. UNITED STATES
C. S. EMERY & Co.

United States Customs Court, Third Division

(Decided June 6, 1972)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*Harlington Wood, Jr.,* Acting Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge

LANDIS, Judge: The issue in this protest is whether 68 pieces of granite imported from Canada in a finished condition, designed to replace particular pieces of the facing of the Al Jolson monument were properly classified by customs as articles of granite, not specially pro-

vided for, decorated,[1] under TSUS item 513.84, or should be classified, as plaintiff contends, as granite suitable for use [2] as monumental stone, *inter alia*, dressed, polished, or otherwise manufactured under TSUS item 513.74.

The merchandise was entered at St. Albans, Vt., where upon its classification by customs under TSUS item 513.84 duty was assessed at 27 per centum ad valorem. The claimed classification of plaintiff under TSUS item 513.74 carries the duty of 12.5 per centum ad valorem.

Granite and articles of granite are classified in TSUS in the following relevant context:

SCHEDULE 5.—NONMETALLIC MINERALS AND PRODUCTS

PART 1. – NONMETALLIC MINERALS AND PRODUCTS, EXCEPT CERAMIC PRODUCTS AND GLASS AND GLASS PRODUCTS

Granite and articles of granite:

| | | |
|---|---|---|
| * * * | Granite, not manufactured, and not suitable for use as monumental, paving, or building stone_____ | Free |
| | Granite, suitable for use as monumental, paving, or building stone: | |
| 513.71 | Not pitched, not lined, not pointed, not hewn, not sawed, not dressed, not polished, and not otherwise manufactured__ | * * * |
| 513.74 | Pitched, lined, pointed, hewn, sawed, dressed, polished, or otherwise manufactured_____ | 12.5% ad val. |
| | Other, not specially provided for: | |
| * * * | Not decorated_____ | * * * |
| 513.84 | Decorated _____ | 27% ad val. |

---

[1] The fact that the pieces are "decorated" is not in dispute.

[2] TSUS General Headnotes and Rules of Interpretation state that:

10. General Interpretative Rules. For the purposes of these schedules—

(a) the general, schedule, part, and subpart headnotes, and the provisions describing the classes of imported articles and specifying the rates of duty or other import restrictions to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

* * * * * * *

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

(ii) a tariff classification controlled by the actual use to which an imported article is put in the United States is satisfied only if such use is intended at the time of importation, the article is so used, and proof thereof is furnished within 3 years after the date the article is entered;

The words "suitable for use" in the 1930 Tariff Act are judicially construed to mean " 'actually, practically, and commercially fit' for such use. * * * There must be a substantial actual case * * *." *Keer, Maurer Company* v. *United States,* 46 CCPA 110, 114, C.A.D. 710 (1959).

A photograph of the Al Jolson monument is in evidence (exhibit 1). Mr. Edward R. Brewer, vice-president and manager of the granite and marble division of Selectile Co., Inc., contractors and manufacturers, testified for plaintiff. Defendant adduced no evidence. There is no material dispute as to the facts.

Mr. Brewer, in sum, testified that the imported pieces of granite were manufactured or finished to the specifications of a shop drawing of the dimensions, design, and other features of the facing of the Al Jolson monument they were to replace; that the imported pieces were solely used for that purpose, and that some of the pieces which were not finished in accordance with the shop drawing required some further fabrication.

Plaintiff contends that, in the tariff sense, the imported pieces of granite are not "articles" of granite and, if they are, then the pieces are relatively more specifically provided for as granite, suitable for use as monumental stone under TSUS item 513.74,[3] than under TSUS item 513.84[4] as "Granite and articles of granite * * * Other, not specially provided for * * * Decorated". While we agree that TSUS item 513.74 is relatively more specific than TSUS item 513.84,[5] defendant, relying on *Otagiri Mercantile Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 184, C.D. 2173 (1960), and the cases cited therein, argues that granite pieces manufactured to finished specifications, in a manner that in effect "dedicate" the pieces to use in the Al Jolson monument, are advanced beyond the point of granite, suitable for use as monumental stone. Plaintiff in its reply brief distinguishes *Otagiri* on the facts and, in support of the claimed classification as granite, suitable for use as monumental stone, cites the holding in *Austin* v. *United States*, 1 Ct. Cust. Appls. 510, T.D. 31532 (1911), that pieces of granite, ornamented and polished to size, scale, and design, and ready, after being cemented or leaded together, for use as monuments, were properly dutiable as monumental stone under paragraph 118

---

[3] "Items 513.71 and 513.74 clarify the provisions of paragraph 234(a) of the [1930] tariff act by adding the term 'sawed'. The addition of this term is in line with a ruling by the Customs Court (CD 1416) [*International Granite & Marble Corp., et al.* v. *United States*, 28 Cust. Ct. 245, C.D. 1416 (1952)] that granite slabs, rough sawed on both faces, are dutiable as manufactured granite." [Tariff Classification Study, Schedule 5, page 23.]

[4] "Items 513.81 and 513.84 embrace the granite articles * * * classified under the 'basket' provisions in paragraph 214 [of the Tariff Act of 1930]." [Tariff Classification Study, Schedule 5, page 23.]

[5] The source history, cited in nn. 3 and 4, supports that under the superior heading, "Granite and articles of granite", the inferior heading of TSUS item 513.74 is clearly more relatively specific than the inferior "basket" or catchall heading of TSUS item 513.84. Cf. *The Cronite Co., Inc.* v. *United States, et al.*, 38 Cust. Ct. 76, 87, C.D. 1847, 150 F. Supp. 754 (1957), *affirmed, W. E. Sellers* v. *The Cronite Co., Inc.*, 45 CCPA 27, C.A.D. 668 (1957). The rule of relative specificity is codified in TSUS under General Headnotes and Rules of Interpretation 10(c).

of the Tariff Act of 1897.[6] Upon authority of the *Austin* case and for the additional reasons we shall discuss, we sustain the protest.

The *Otagiri* case, relied on by defendant, involved the classification of stone, otherwise manufactured into so-called stone lanterns, which customs classified under the "basket" provision of paragraph 214 of the Tariff Act of 1930 as articles, composed wholly or in chief value of earthy or mineral substances, not specially provided for, decorated. *Otagiri* claimed that the stone lanterns were properly classifiable under paragraph 234 as granite, suitable for use as monumental, paving, or building stone, not specially provided for, if hewn, dressed, pointed, pitched, lined, or polished, or otherwise manufactured. Upon consideration of conflicting judicial precedents involving similar issue as to classification of stone under tariff provisions analogous to paragraphs 214 and 234, some of which, as the court noted, had been called to the attention of Congress in connection with the preparation of the Tariff Act of 1930, this court overruled the claim under paragraph 234 and held the stone lanterns properly dutiable under paragraph 214. The court in *Otagiri* was of the opinion that the classification of merchandise, stone lanterns, which had clearly "been advanced beyond the stage of monumental or building stone and * * * [had] been fashioned into pieces which are adapted only for use as stone lanterns" (*Otagiri*, 44 Cust. Ct. at 190), was controlled by the line of cases, which in principle Congress tacitly approved, holding that:

> * * * when stone, although it may have been monumental or building stone, is cut into the form of an article or is adapted to a use other than that of monumental or building stone, it has passed beyond the stage of monumental or building stone, or is unsuitable for such use, and is, therefore, not classifiable under paragraph 234 of the Tariff Act of 1930, or its predecessors, as stone, suitable for use as monumental or building stone. *United States* v. *Vantine* [166 Fed. 751, 16 Treas. Dec. 348, T.D. 29375], *supra; Manufacturers' Paper Co.* v. *United States*, 3 Ct. Cust. Appls. 72, T.D. 32353; *United States* v. *Manufacturers' Paper Co.*, 4 Ct. Cust. Appls. 110, T.D. 33390; *P. H. Petry Co.* v. *United States*, 43 Treas. Dec. 663, Abstract 45830; *Hudson Forwarding & Shipping Co.* v. *United States*, 63 Treas. Dec. 910, T.D. 46419; *K. M. Kubierschky* v. *United States*, 5 Cust. Ct. 143, C.D. 386. [*Otagiri*, 44 Cust. Ct. at 188.]

The material fact which distinguishes this case from *Otagiri* is that the imported granite has been fashioned for actual use in the monument of Al Jolson. The phrase "otherwise manufactured", which

---

[6] Paragraph 118, *inter alia,* provided for granite and other building or monumental stone, not specially provided for, hewn, dressed, or polished. The language of paragraph 118 was changed and the words "suitable for use" as monumental or building stone first appeared in paragraph 99 of the 1913 Act.

embraces any operation upon granite which produces or brings about a result which is equal to or superior to the named operations which precede it in the statute, we believe, relates to any operation that advances the granite, even to the degree of being finished for use in the condition imported, provided it is still suitable for use as monumental stone, cf. *International Granite & Marble Corp.*, et al. v. *United States*, 28 Cust. Ct. 245, 248, C.D. 1416 (1952). For when Congress intended, in TSUS, to classify merchandise according to the degree that a material was advanced in condition, the language it used clearly so states,[7] *United States* v. *Marsching*, 1 Ct. Cust. Appls. 216, T.D. 31257 (1911). There is nothing in the context of the provision for granite, suitable for use as monumental stone, otherwise manufactured, to suggest that Congress intended to exclude therefrom granite, suitable for use as monumental stone, merely because the stone has been fashioned for actual use in a particular monument. Actual use, no less than does chief use, of necessity implies suitability for use, *United States* v. *Lorsch & Co.*, 8 Ct. Cust. Appls. 109, 111, T.D. 37222 (1917). Consistent with the decision in *Austin* v. *United States, supra,* we are of the opinion that even though the granite pieces, in the condition imported, were otherwise manufactured into finished pieces for use in the Al Jolson monument, Congress did not contemplate that such granite should be regarded as articles of granite, other than granite suitable for use as monumental stone. Cf. *Henry Pels & Co.* v. *United States*, 27 CCPA 1, 4, C.A.D. 51 (1939) ; *Mutual Lamp Mfg. Co.* v. *United States*, 21 CCPA 231, T.D. 46762 (1933).

The facts in *Austin* v. *United States,*[8] *supra,* as plaintiff points out, are not materially different from the facts in this case. The granite in *Austin* was prepared in pursuance of designs and specifications for monuments. It consisted of pieces such as die, base, and cap. The pieces were dressed, ornamented, and polished abroad to size, scale and design, ready to be cemented and leaded together as monuments. The question, basically the same as it is here, was whether paragraph 118

---

[7] Compare TSUS item 520.11 classifying—

    Precious and semiprecious stones, natural (except industrial diamonds), whether in their natural form or broken but not advanced in condition or value from their natural state, and not set . . . . .

with the superior heading of TSUS items 520.21 to 520.31 :

    Industrial diamonds, natural or synthetic, whether or not advanced in condition or value from their crude state by cleaving, cutting, lapping, sawing, or other process, but not set and not suitable for use in the manufacture of jewelry :

    \*      \*      \*      \*      \*      \*      \*

[8] See also, *United States* v. *Grasselli Chemical Co.*, 3 Ct. Cust. Appls. 486, T.D. 33123 (1913), where hewn lava stone, especially adapted and shaped for use inside the lining of chimneys, classified under paragraph 114 of the 1909 Tariff Act as other building stone, and claimed dutiable as an unenumerated manufactured article under paragraph 480 was, on evidence "showing not only that lava rock may be \* \* \* used [as building stone], but that it is in fact so used, and that the particular importation in question is made for the purpose of use as building stone", held properly dutiable as classified under paragraph 114.

of the 1897 Act, *inter alia*, classifying granite, and other monumental stone, not specially provided for, hewn, dressed, or polished (the customs classification), was a more specific enumeration for the imported pieces than was section 6, which classified unenumerated manufactured articles, or paragraph 97, which classified articles in chief value of earthy or mineral substances (as *Austin* claimed). The following *Austin* discussion, sustaining the classification under paragraph 118, in our opinion, supports the position we have taken in sustaining the protest claim here:

> The two paragraphs, 117 and 118, should be read together. Paragraph 117 provides for monumental stone unmanufactured or undressed. Paragraph 118, immediately following, provides for monumental stone hewn, dressed, or polished, and fixes a tax of 50 per centum ad valorem as against a tax for the unmanufactured or undressed at 12 cents per cubic foot. The intent to cover the advanced or manufactured article by paragraph 118 we think is manifest. It is true that in one sense these importations nearly approach a completed article, in fact are ready for use with the slight exception of leading or cementing. But we can not escape the conviction that they come more properly under paragraph 118 than under section 6. Most clearly they are building stone, and they are hewn, dressed, and polished, and are within the language of paragraph 118. There is nothing in the language of the act, taken as a whole, which leads us to the conclusion that the intent of Congress was to exclude articles so far advanced as are these from the provisions of paragraph 118.

The question is not new. It was first presented to the Board of General Appraisers in *Austin, Baldwin & Co.* v. *United States* (144 Fed. Rep., 702), opinion by General Appraiser McClelland. It was there held that monuments in sections consisting of pieces of dressed granite to be assembled and erected as monuments without further manipulation were dutiable under paragraph 118. This case was taken by appeal to the district court and there affirmed, *ibid.* On appeal to the court of appeals, the decision of Hazel, district judge, was affirmed without opinion.

It is suggested in the brief of counsel that the force of this opinion is lessened by the fact that in the case cited the protest did not make the claim that the importation was dutiable under section 6. But an answer to this contention is found in the case of *Murphy* v. *United States* (162 Fed. Rep., 871), which was heard by Justice Moody and Circuit Judges Dallas, Gray, and Buffington. Upon full consideration the case of *Baldwin* v. *United States, supra,* was followed. The court held that paragraphs 117 and 118 were evidently meant to cover the general subject of building and monumental stone. The opinion proceeds:

> In substance, paragraph 117 provided for importation thereof in crude state, described them as "unmanufactured or undressed," and levies a tax of 12 cents per cubic foot; while

paragraph 118 provides that when such material was "hewn, dressed, or polished"—that is, when the value had been increased from the crude to a "hewn, dressed, or polished" state—they were taxed at 50 percent ad valorem. Now, it is clear that these articles which were finished parts of a monument, each dressed to scale and ornamented and polished to design, were aptly described as "granite * * * dressed or polished." They are of the general class of articles, viz, monumental stone, which paragraph 118 covered, and are therein more specifically designated as "granite or monumental stone, dressed or polished," than in the broader generic language of section 6 as "articles manufactured in whole or in part."

We agree fully with the views expressed in this opinion.

The importers contend that the later case of *Vantine & Co.* v. *United States*, decided at circuit by Martin, district judge (159 Fed. Rep., 289), and on appeal affirmed by the Circuit Court of Appeals of the Second Circuit (166 Fed. Rep., 751),[9] supports their contention and is in conflict with the cases cited. That case must be considered as authority only for the precise point ruled on. The merchandise imported consisted of Japanese lanterns formerly used in Japan as ornamental garden lanterns and brought into this country as curios. It was held that they had passed out of the class of building and monumental stone, were not covered by any paragraph, and therefore, should be classified under section 6 at 20 percent as unenumerated manufactured articles.

The *Vantine* case is clearly distinguishable from the present. Paragraph 118 relates only to monumental or building stone. When such stone, although it formerly may have been monumental or building stone, is cut into the form of an article like a stone lantern, used as an ornamental garden lantern, it is no longer suitable for building purposes or for monumental stone.

There is none of the present importation which is not suitable for monumental stone, and in fact dedicated to that use. It comes literally within the terms of paragraph 118, whereas the changed condition of the article in the *Vantine* case excludes it from the terms of paragraph 118. [1 Ct. Cust. Appls. at 511–512.]

That the existing TSUS provision provides for granite, *suitable for use as* monumental stone, pitched, lined, pointed, hewn, sawed, dressed, polished, or otherwise manufactured, whereas paragraph 118, construed in *Austin*, pertinently provided for granite, and other monumental stone, not specially provided for, hewn, dressed, or polished, does not, in our opinion, alter the force of the *Austin* decision with respect to the imported granite, designed for actual use in the Al Jolson monument.

---

[9] *Vantine* was one of the controlling cases relied on by this court in *Otagiri*, 44 Cust. Ct. 184, C.D. 2173 (1960).

The protest claim under TSUS item 513.74 is sustained.[10] Judgment will be entered accordingly.

---

[10] Accord, Bureau of Customs Ruling, T.D. 66–94(20), 101 Treas. Dec. 286 (1966).