MANUFACTURERS' PAPER CO. *v.* UNITED STATES (No. 737).[1]

DRESSED LAVA STONE—UNENUMERATED MANUFACTURED ARTICLE.

These dressed lava stones are used as a part of drums in wood-pulp machines. The words "hewn, dressed, or polished" in paragraph 118, tariff act of 1897, would seem to have reference to the advancement of building stone as such, and the importation is not one of building stone. These stones in fact had been adapted for another and distinct use. They were dutiable as unenumerated manufactured articles at 20 per cent ad valorem, under section 6, tariff act of 1897. Vantine case (159 Fed. Rep., 289). United States v. Tamm (2 Ct. Cust. Appls., 425; T. D. 32173), distinguished.

United States Court of Customs Appeals, March 20, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26111 (T. D. 31757).

[Reversed.]

*Comstock & Washburn* (*Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellant.

*William L. Wemple,* Assistant Attorney General (*Charles Duane Baker* on the brief), for the United States.

Before MONTGOMERY, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in this case consisted of lava stone 5 or 6 feet in length, about 9 inches in depth, by 5 inches in width, the longer sides

---

[1] Reported in T. D. 32353 (22 Treas. Dec., 495).

converging so that a cross section of the stone would not show as a parallelogram but somewhat wedge-shaped. In their use they are fitted into an iron drum, the reduced edge of the stone being inserted in the pocket of the drum and cemented in. In its completed form this drum with the stone surface is used for grinding up paper pulp. As imported, the surface of the stone is left rough, but on the 5-inch side of the stone grooves are cut from one-half to three-fourths of an inch in depth and of varying lengths the entire length of the stone. After being imported the 5-inch surface is smoothed down leaving the grooves, however, as they were, and it is then used as before stated as part of a drum in a wood pulp machine.

The stone was assessed for duty under paragraph 118 of the tariff act of 1897 reading:

Freestone, granite, sandstone, limestone, and other building or monumental stone, except marble and onyx, not specially provided for in this act, hewn, dressed, or polished, fifty per centum ad valorem.

It is claimed by the importers that the importation was dutiable under paragraph 119 as—

Grindstones, finished or unfinished, one dollar and seventy-five cents per ton,

or at 20 per cent ad valorem under section 6 as a nonenumerated article manufactured in whole or in part. The Board of General Appraisers sustained the collector's classification, and the importer appeals to this court.

The first question arising is whether the goods were properly classified by the appraiser. The testimony upon the question of whether the material of which these articles are made could properly be called building stone is not altogether clear or convincing. The only testimony offered by the Government was that of two witnesses taken in a previous case and would seem to be almost wholly hearsay. It is perhaps only fair to say that upon this question the testimony of the importers is also negative, and that if the case were to turn upon the question of whether, based upon the appearance and composition of the stone, it is properly classifiable as a building stone, the collector's classification being prima facie correct ought to prevail. But whatever might be the view as to whether these are to be treated as building stone, there would still be very serious doubt as to whether they would come under the designation in paragraph 118 as hewn, dressed, or polished, within the meaning of that phrase. It would seem that those words "hewn, dressed, or polished" would have reference to the advancement of building stone as such and that if they were hewn or dressed for any other or different use than as building stone, they would not come within that paragraph of the act, although they might fall under the preceding paragraph, No. 117.

But we think these articles were not properly assessed as building stone for another reason. In Athenia Steel & Wire Co. *v*. United States (1 Ct. Cust. Appls., 494; T. D. 31526), the rule was stated that—

In order to bring any material for manufacturing within a tariff designation which covers one of its ultimate uses, it should be so far advanced by the processes applied thereto in the line of that particular ultimate use that, either from an examination per se evidences of its ultimate use are made clear, or so far advanced that its utility in any of its other possible uses shall have been destroyed.

We think, applying that rule to this case, that these articles are evidently not fitted for use as builders' stone, and are adapted to another and distinct use. In this respect the case is similar to the Vantine case (159 Fed. Rep., 289, and 166 Fed. Rep., 751), in which this same paragraph was under consideration. In that case stone lanterns were in controversy. It appeared that the parts or pieces imported had been cut and dressed, consisting of bases, dies, and caps, the top dies having holes or openings bored or cut through the sides thereof, and it also appeared from the evidence that those pieces were put together and set up in parks or graveyards. It was held in that case that these stones were no longer dutiable as building stones, but had become articles adapted to another and different use.

The authority of this decision was recognized in Austin *v*. United States (1 Ct. Cust. Appls., 510; T. D. 31532), where it was said—

When such stone, although it formerly may have been monumental or building stone, is cut into the form of an article like a stone lantern, used as an ornamental garden lantern, it is no longer suitable for building purposes or for monumental stone.

We think the same may be said of this importation. True these blocks might be broken in pieces and portions of them made use of. They might be ground up and used in that form. But in the form in which imported, they are not adapted to use as building stone. The fitness of the native stone for such use has been destroyed, and it has been devoted to a new use.

It remains to determine whether this importation should be dutiable as grindstone. It is urged that it should be held dutiable as grindstone by similitude, and certain definitions of a grindstone are given in the brief of counsel from Murray, the Standard, and Webster's New International Dictionary, in which, under grindstone, appears the word "millstone." But the citation as given is misleading, for upon examining the dictionaries cited, it appears that "millstone" as so used is an obsolete word. So that we are left to compare this article with a grindstone, the meaning of which is well understood, and we think this importation as it is made bears no similitude to a grindstone.

At the argument the query was made as to whether this case would fall within the rule of United States *v*. Tamm & Co. (T. D. 32173;

2 Ct. Cust. App., 425). The present case, however, arose under the act of 1897 and the applicable paragraph 97, which was held not to include articles which were not susceptible of decoration. United States *v.* Downing (207 U. S., 354). See, also, Fensterer & Ruhe *v.* United States (1 Ct. Cust. Appls., 93; T. D. 31110). The importation could not therefore under these rulings be held dutiable as earthy or mineral substances. The Tamm case arose under paragraph 95 of the act of 1909, which covers articles or works of earthy or mineral substances, whether susceptible of decoration or not.

It follows that the goods should have the same classification that was given to stone lanterns in the case of United States *v.* Vantine, *supra,* 20 per cent as an unenumerated manufactured article. The decision of the Board of General Appraisers will be *reversed* and the case remanded with directions to reliquidate accordingly.

SMITH, Judge, did not sit in this case.