UNITED STATES *v.* MANUFACTURERS' PAPER Co. (No. 941).[1]

DRESSED LAVA STONES AS EARTHY OR MINERAL SUBSTANCES.

Lava stone *per se* is not in all cases a monumental or building stone, and it appears that those of the importation are not fit for or designed to be devoted to such uses. They are not free as lava unmanufactured and they fall appropriately within the provisions of paragraph 95 as articles composed wholly or in chief value of earthy or mineral substances not specially provided for.—United States *v.* Tamm & Co. (2 Ct. Cust. Appls., 425; T. D. 32173); United States *v.* Stouffer (3 *ib.*, 67; T. D. 32331); Waddell & Co. *v.* United States (3 *ib.*, 406; T. D. 32989).

United States Court of Customs Appeals, April 29, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28967 (T. D. 32655).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Frank L. Lawrence*, special attorney, on the brief), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for the appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER. Judge, delivered the opinion of the court:

The merchandise is roughly cut or dressed lava stones of various sizes and is used in paper mills.    As imported each stone is 5 or

[1] Reported in T. D. 33390 (24 Treas. Dec., 639).

6 feet long and about 9 inches wide by 5 inches thick. The 9-inch sides are not exactly parallel, making the stones somewhat, though not markedly, wedge shaped. The dimensions vary in different importations. They are sometimes known as lava bricks and the importations in this case are suitable, prepared for, and designed to be fitted to and cemented upon the outer surface of cast-iron drums. The entire exterior surface is then ground with an emery wheel to make it perfectly smooth and true and the drums are used as rolls for grinding paper pulp. Each stone when imported has grooves upon one side some 2 to 4 inches in length, which, when the stones are put in place, evidently appear upon the outer surface of the drums and contribute to their successful operation.

The merchandise was invoiced as grindstones, was returned by the appraiser as manufactures of lava stone, and assessed for duty by the collector at 50 per cent ad valorem under paragraph 114 of the act of 1909, which reads as follows:

114. Freestone, granite, sandstone, limestone, and all other monumental or building stone, except marble, breccia, and onyx, not specially provided for in this section, hewn, dressed, or polished, or otherwise manufactured, fifty per centum ad valorem; unmanufactured, or not dressed, hewn, or polished, ten cents per cubic foot.

In their protest the importers made various claims, but before this court concedes, in view of other cases decided here, that the merchandise should have been classified under paragraph 95 of the same act, and this was one claim made in the protest. The pertinent part of that paragraph is as follows:

95. Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, whether susceptible of decoration or not, if not decorated in any manner, thirty-five per centum ad valorem; * * *.

The Government agrees to such a classification provided this court is of opinion that these stones are not dutiable as hewn or dressed building stones under paragraph 114.

The merchandise is said to be identical with that before this court in the case of Manufacturers' Paper Co. *v.* United States (3 Ct. Cust. Appls., 72; T. D. 32353) and is designed for a like use. That case involved certain paragraphs of the act of 1897 and the merchandise was held dutiable as a nonenumerated manufactured article. The applicable provisions of the act of 1909 are so manifestly different from those of the act of 1897 that no further reference to that case is deemed necessary.

In the case at bar the board held these stones to be dutiable as nonenumerated manufactured articles under paragraph 480 of the act of 1909, but, as stated, neither party now claims this conclusion to be tenable.

It is material to note that paragraph 608 of the act of 1909 places "lava, unmanufactured," on the free list. If this and the duty paragraph be combined in the following manner—

Freestone, granite, sandstone, limestone, and all other monumental or building stone, except marble, breccia, and onyx, not specially provided for in this section,

hewn, dressed, or polished, or otherwise manufactured, fifty per centum ad valorem; unmanufactured, or not dressed, hewn, or polished, ten cents per cubic foot.   Lava, unmanufactured, free.

the meaning of these paragraphs, when construed together, as they must be, becomes more readily apparent.

So written it would seem that marble, breccia, and onyx were, together with the other specifically mentioned rock or stone, understood by Congress to be building stones, while lava, the melted rock which has been discharged from a volcanic crater and afterwards hardened where deposited, is not by express declaration or inference placed in or excluded from the category of building stone.   It is left in a class by itself, without any attempt to say whether it is or is not a building stone.

This view is strengthened by the fact that the cooled and hardened lava may possess various elements and qualities dependent among other things upon the substances that were melted in the crater and poured therefrom in a molten condition.

In some cases a building stone in the ordinary sense of the term could not result therefrom, while in others perhaps it might.

This lava stone comes from France, and it seems, using in substance the language of a witness, that it lacks a sufficiently close unity of its molecules to give it sufficient strength to resist the crushing force which operates upon stone when put to building uses.

It is at once apparent that this resisting quality may be required in a greater or lesser degree, according to the particular use to which a building stone may be put; but whatever the standard, if any, may be, it seems that Congress understood that certain stone possessed it, but did not attempt to say whether lava stone did or did not.   While granite or limestone, for instance, may differ in their ability to withstand a crushing force, or while the products of different quarries of either may vary somewhat in that respect, it must be accepted that Congress understood that as a class either possessed such ability in the requisite degree and so declared they might be classified as building stone.

The record here tends to show that the lava stone from which these pieces are cut has peculiar acid-resisting qualities which make it specially desirable in the construction of apparatus used in connection with chemical manufacturing and that it is not generally used or adapted for monumental or building purposes.

These stones do not as a matter of course fall within the provisions of paragraph 114, because lava stone per se is not in all cases a monumental or building stone, and it appears that in their condition as imported they are not fit for or designed to be devoted to such uses. They are not free, as lava unmanufactured, and therefore appropriately fall within the provisions of paragraph 95 as articles composed wholly or in chief value of earthy or mineral substances not specially provided for, as claimed in the protest.   United States v. Tamm &

Co. (2 Ct. Cust. Appls., 425; T. D. 32173); United States *v.* Stouffer (3 Ct. Cust. Appls., 67; T. D. 32351); Waddell & Co. *v.* United States (3 Ct. Cust. Appls., 406; T. D. 32989).

It is urged that such a conclusion is not in harmony with United States *v.* Grasselli Chemical Co. (3 Ct. Cust. Appls., 486; T. D. 33123). That case involved pieces of hewn lava stone, shown by the record to be some 4 feet long, 3 feet wide, by 12 inches thick, specially shaped to build the inside of a tower or chimney some 35 feet high and 12 feet in diameter, the outer portion of which was of lead, and was used in the manufacture of sulphuric acid. One purpose of so using those lava stones was to protect the outer portion of the chimney from the action of the acid fumes, but the stone also served to give form and stability to the chimney or tower.

It was held in that case that this was an adaptation and appropriation of the stone to a building use, which made it classifiable under paragraph 114 as a building stone. No such state of facts appears in this case, and in holding, as we do, that the lava stone here is not a building stone, but is dutiable under paragraph 95, we see no lack of harmony between the conclusion reached in the Grasselli case and in this.

As already stated, lava rock may or may not be a building stone, depending among other things upon its molecular formation, but when it is found to be prepared and appropriated for a building-stone use it may be held dutiable as such, as in the Grasselli case.

The judgment of the Board of General Appraisers is *reversed* and reliquidation ordered pursuant to the views herein expressed.