(C. D. 1780)

INTERNATIONAL LAPIDARIES CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 10, 1956)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before EKWALL, JOHNSON, and DONLON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on synthetic rutile at 40 per centum ad valorem under

paragraph 214 of the Tariff Act of 1930 as a synthetic material of gem stone quality or an article composed wholly or in chief value thereof, decorated. Various claims are made in the protest, but the one relied on is that the merchandise is properly dutiable under the same paragraph at 30 per centum ad valorem as an earthy or mineral substance, not decorated in any manner.

Paragraph 214 of the Tariff Act of 1930, as originally enacted, provided:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

This paragraph was modified by the General Agreement on Tariffs and Trade, T. D. 51802, but specifically excepted were "synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials."

At the trial, William J. Hagetter, a partner in the plaintiff company, testified as follows: His firm is engaged in the business of cutting and polishing precious and semiprecious stones, and he, himself, has cut and polished "everything probably but a diamond" in the course of his experience of about 39 years. He was familiar with the transaction involved herein and produced a sample of the merchandise, which was marked plaintiff's illustrative exhibit 1. He called it "rutile" and said its trade name was "titania gem." It is a small yellowish stone, cut, faceted, and polished, and apparently ready for use in a piece of jewelry.

The witness also produced a small piece of stone, illustrative of the material sent abroad to be processed, which was marked plaintiff's illustrative exhibit 2. It is a rough piece of yellowish translucent stone. The witness said that it weighed about 27 carats, whereas the pieces sent abroad, in the form of articles called boules, weighed from 100 to 200 carats each. He added that the outside of a boule has a sort of crust, but the sample, which was a fragment from the center of the boule, did not.

The witness described the cutting and polishing of stones as follows: The rough material is sawed to the desired sizes, and the pieces obtained are given a rough shape on a grindstone. Then, the stone is cemented to a stick and is rounded, cut, and polished. The cutting is performed on a fine copper diamond-impregnated cutting wheel, and the stone is polished on a tin wheel with lindy powder.

The witness stated that plaintiff's illustrative exhibit 1 was a cut and polished stone; that no other operations had been performed on it; and that the purpose of cutting and polishing was to bring out its

inherent beauty. In his experience, he had never heard the term "decoration" used in connection with the cutting and polishing of stones. He did not consider plaintiff's illustrative exhibit 1 decorated. He has never been offered cut and polished synthetic rubies, spinel, or rutile as decorated stones. He explained that a stone of gem stone quality, synthetic or natural, is not considered a finished article until it is cut and polished. Some cut and polished stones may be engraved, but merchandise like plaintiff's illustrative exhibit 1 is not subjected to any further processing.

On cross-examination, the witness testified that, in addition to making articles for jewelry purposes, corundum (synthetic sapphire) is used to make phonograph needles, thread guides for machines, and watch jewels. He said that, for those purposes, the stones are not cut and polished so as to make them beautiful and that they are not decorative.

There was then introduced into evidence half of a boule of rutile (defendant's illustrative exhibit A). It is similar to, but larger than, plaintiff's illustrative exhibit 2. The outer side appears dull and crusted, but the inner side is bright and shiny. The witness stated that in color it was superior in quality to plaintiff's illustrative exhibit 2.

The witness agreed with a statement read by counsel from a book entitled "Gems and Gem Materials," by Edward Henry Krauss and Chester Bacon Slawson, to the effect that gems may be improved by judicious cutting and polishing. He stated also that the cutting and faceting of a stone tend to refract and reflect rays of light, thus adding to the beauty and brilliance of the stone.

Defendant called Reginald C. Miller, a lapidary, who testified that his work, in which he has been engaged for 20 years, consists of the cutting and polishing of precious, semiprecious, and synthetic stones of gem stone quality. The purpose of cutting such stones is to produce articles of beauty, which can be used for jewelry or adornment. He considered plaintiff's illustrative exhibit 1 a fashioned stone. He was not familiar with the term "decorated," in connection with the cutting of stones. He was conversant with the word "decorative," which he said meant enhancing the beauty of something, and, in his view, that was done to the material in order to produce plaintiff's illustrative exhibit 1. He had never had a stone of beauty and adornment which had not been cut and polished.

The sole question before us is whether a synthetic stone, rutile, which has been cut, faceted, and polished, is "decorated," within the meaning of paragraph 214, *supra*.

The word "decorate" is defined to mean "To increase in beauty by the addition of something becoming or beautiful; to embellish." Webster's New International Dictionary.

"Whether or not an article is 'ornamented' or 'decorated' is a question of fact to be determined with reference to the particular article." *United States* v. *Mutual China Co.*, 9 Ct. Cust. Appls. 232, 234, T. D. 38202. It is the result produced upon the article, and not the method of production, which determines the classification. *United States* v. *Todd & Co.*, 11 Ct. Cust. Appls. 50, T. D. 38690. On fabrics, embroidery has been held to be a method of decoration. *Kayser & Co.* (*Inc.*) v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367. Bottle caps and sprinkler tops, embossed with a design, have been classified as decorated. *Oscar Heyman & Co.* v. *United States*, 27 Treas. Dec. 316, T. D. 34844; *Emile Utard* v. *United States*, 27 Treas. Dec. 399, T. D. 34888. China plates, imprinted with a word within two concentric circles, in such manner as to be attractive in color and design, have been held to be decorated. *United States* v. *Bernard, Judae & Co.*, 4 Ct. Cust. Appls. 403, T. D. 32841. Earthenware articles having a glaze of but a single color are decorated. *United States* v. *L. Straus & Co.*, 168 F. 569, 17 Treas. Dec. 266, T. D. 29648. A provision for ornamental flowers (paragraph 438, Tariff Act of 1909) was held to include dyed flowers, since the dye or coloring was effected by adding by artificial means a material not common to the natural or cut flower. *Bayersdorfer & Co.* v. *United States*, 4 Ct. Cust. Appls. 446, T. D. 33875.

The latest case on this subject is *United States* v. *N. M. Albert Co. et al.*, 41 C. C. P. A. (Customs) 191, C. A. D. 549. The merchandise there consisted of agates, which had been cut into rather thin slices and partially dyed. They were held properly classified by the collector under paragraph 214, Tariff Act of 1930, as earthy or mineral substances, partially manufactured, and decorated. The court said (p. 195):

We think the dyeing of the agate so as to make it 100 per cent black, which requires it to remain in the dye six weeks, is a decoration, and that the partial dyeing of the agate, which requires it to remain in the dye for from two to three weeks, is a substantial partial decoration and is an addition to the agate of something becoming which to a substantial degree enhanced the beauty of the agate towards its ultimate use as black onyx in the manufacture of jewelry.

In the instant case, no foreign material, such as dye, has been added for the purpose of enhancing the beauty of the article. No process, such as embossing or engraving, has embellished the article with a design. The Government claims that the cutting, faceting, and polishing of the rough material has enhanced the beauty of the stone and that, therefore, it has been decorated. In our view, and according to the testimony of the witness Hagetter, the purpose of these operations was to bring out the inherent beauty of the stone *per se*. In fact, they created the jewel out of the raw material.

A diamond, or any other jewel, cut, faceted, and polished to bring out its beauty, while used for a decorative purpose, is not commonly considered to be itself decorated. That term applies to stones which have been engraved or carved with designs, such as cameos, seals, or scarabs. It is significant that neither of the witnesses, both of whom had long experience in the field, had heard the term "decorated" used in connection with the cutting and polishing of stones.

We hold, therefore, that the merchandise involved herein consists of a mineral substance of gem stone quality, or an article composed thereof, not decorated, and that it is properly dutiable at 30 per centum ad valorem under paragraph 214 of the Tariff Act of 1930. To that extent, the protest is sustained. In all other respects, it is overruled. Judgment will be rendered accordingly.