(C.D. 2173)

Otagiri Mercantile Co., Inc.
Hoyt, Shepston & Sciaroni et al. } *v.* United States

United States Customs Court, Third Division

(Decided May 2, 1960)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *George R. Tuttle, Jr.,* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: These are protests, consolidated at the trial, against the collector's assessment of duty on stone lanterns, imported from Japan in a knocked-down condition, at 36 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles, composed wholly or in chief value of earthy or mineral substances, not specially provided for, decorated. Various claims are made in the protests, but those relied upon at the trial are that the merchandise is properly dutiable under paragraph 234 of the Tariff Act of 1930, as modified, *supra,* at 13½ per centum ad valorem, when made of granite, and at 22½ per centum ad valorem, when made of sandstone, or that it is dutiable under paragraph 214 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, at 15 per centum ad valorem as articles, composed wholly or in chief value of earthy or mineral substances, not specially provided for, not decorated.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 214 (as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108):

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not:

    \*       \*       \*       \*       \*       \*       \*

    Other, if decorated \* \* \*_____ 36% ad val.

Paragraph 214 (as modified by the General Agreement on Tariffs and Trade, T.D. 51802):

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not) \* \* \* :

    If not decorated in any manner:

    \*       \*       \*       \*       \*       \*       \*

    Other_____ 15% ad val.

Paragraph 234 (as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108):

(a) Granite suitable for use as monumental, paving, or building stone, not specially provided for:

   Hewn, dressed, pointed, pitched, lined, or polished, or otherwise manufactured_____ 13½% ad val.

\* \* \* \* \* \* \*

(c) Freestone, sandstone, limestone, lava, and all other stone suitable for use as monumental or building stone, \* \* \* not specially provided for, hewn, dressed, or polished, or otherwise manufactured_____ 22½% ad val.

At the trial, there were received in evidence samples of the merchandise here involved. Plaintiffs' exhibit 1 comprises four pieces of smooth sandstone, which, when assembled, form a 12-inch stone lantern, described on the invoice in protest No. 59/10049 as Izumo "Kaku-Yukimi" (referred to as "Kaku Kukimi" in the testimony). The pieces include a four-legged arched base, a hexagonal middle base, a hexagonal light chamber with six openings in various shapes (square, round, half moon, and four petalled), and a fairly flat hexagonal roof, having a pointed knob at the top.

Plaintiffs' exhibit 2 comprises five pieces of rough sandstone, which, when assembled, form an 18-inch stone lantern, described on the invoice in protest No. 59/10049 as Izumo "Rankei." The pieces include an oblong base, a shaft which sets into the base and is curved at the top, a hexagonal middle base, a hexagonal light chamber with five openings of various shapes (square, round, and half moon), and a fairly flat hexagonal roof, having a pointed knob at the top.

Plaintiffs' exhibit 4 comprises five pieces of rough granite, which, when assembled, form a 4½-foot stone lantern, described on the invoice in protest No. 59/10033 as "Oribe Gata type Stone Lantern." The pieces include a stone shaft with a slight recess or niche on one side, a square middle base, a square light chamber with four openings in various shapes (square, round, and half moon), a square sloping roof, and a corded ball-shaped top piece. Incisions have been made around the openings of the light chamber, making slight recesses, and wooden slats have been inserted in the square-shaped openings.

At the trial, Raymond T. Hirokawa, merchandise manager of Otagiri Mercantile Co., testified that he was familiar with plaintiffs' exhibits 1 and 2 and that he had seen such merchandise used in Japanese-type gardens in California.

James S. Hirano, owner of United Enterprises, testified that he imports and sells Japanese stone lanterns and has seen them used in Japan and in the United States. He was familiar with plaintiffs' exhibit 4 and described it as a chiseled stone lantern, composed of four parts, measuring 4½ feet when assembled and weighing between 300 and 400 pounds. Photographs of the exhibit were received in evidence as plaintiffs' exhibit 3.

The witness stated that Japanese stone lanterns are used in Japanese-styled gardens and form an integral part of their design. They

are hand-chiseled in most instances, the craft being handed down from father to son. According to the witness, the original of the Oribe lantern (plaintiffs' exhibit 4) is at the Katsura, detached summer palace in Kyoto, in what is considered one of the most beautiful Japanese gardens in the world. He stated, further, that the words "Kaku Kukimi," used in the description of plaintiffs' exhibit 1, mean hexagonal-shaped snow-viewing lantern. He explained that garden lovers in Japan use these lanterns in various sizes to catch the snow on the roof and view the entire garden at snow time with this effect. The witness testified that plaintiffs' exhibit 2 is called Rankei, overhanging lantern, and is used to hang over a lake.

In the opinion of the witness, none of the exhibits is decorated, since there is no attempt to put a design or paint something or do something to the articles. He stated that chiseling is the only way these lanterns can be produced and that, therefore, it is highly farfetched to say that the chiseling is a decoration. He explained that the openings in the light chambers were necessary for the light to shine through and that the openings were in different shapes in order to give an artistic effect. Traditionally, candles are used for lighting. According to the witness, if the full moon and the half moon were just chiseled out on one line, it would be less artistic; that the purpose of the incising around the openings is to give the light a shadow, making the effect artistic. He also stated that the recess on the shaft of plaintiffs' exhibit 4 indicates the front of the lantern. In the opinion of the witness, the design of the articles relates to their use.

Plaintiffs' principal claim is that these stone lanterns are properly dutiable under the appropriate subdivisions of paragraph 234 of the Tariff Act of 1930, as modified, which provide for granite or sandstone, suitable for use as monumental or building stone, hewn, dressed, or polished, or otherwise manufactured.

Reliance is placed upon a line of cases commencing with *Gray Bros. et al.* v. *United States*, 19 Treas. Dec. 635, T.D. 30690, and including *Joe Y. Hirai* v. *United States*, 47 Treas. Dec. 1095, Abstract 49511; and *Cannell & Chaffin, Inc.* v. *United States*, 46 Treas. Dec. 735, Abstract 48260.

In *Gray Bros. et al.* v. *United States, supra,* it was held that Japanese stone lanterns made of dressed limestone, imported in sections ready to be put together, were subject to duty under paragraph 114 of the Tariff Act of 1909 as limestone, hewn, dressed, or polished, or otherwise manufactured. The court stated that it was unable to reconcile the holding of *United States* v. *Vantine*, 166 Fed. 751, 16 Treas. Dec. 348, T.D. 29375, that similar stone lanterns were classifiable as unenumerated manufactured articles, with decisions in

*Baldwin* v. *United States*, 149 Fed. 1022, 12 Treas. Dec. 692, T.D. 27802, and *Murphy* v. *United States*, 162 Fed. 871, 15 Treas. Dec. 528, T.D. 29032, which held certain stones classifiable as monumental or building stone. The court said (pp. 635–636) :

* * * These two latter cases, it is true, involved the classification of granite monuments; but, so far as we have been able to see, the issue in these cases and that in the Vantine case were in all respects similar. The monuments were imported in sections, dressed and ready to be put up, and this was also true of the Vantine lanterns. However, if the law had remained unchanged we should probably have accepted the court's conclusion as controlling on the classification of these lanterns. But Congress in the 1909 revision of the tariff, in reenacting the provision covering building stone, added after the word "polished" the words "or otherwise manufactured," * * *.

   \*      \*      \*      \*      \*      \*      \*

It is our view that whatever doubt there may have been as to whether these lanterns were subject to classification under paragraph 118 of the tariff act of 1897 has been removed by the addition of these words "or otherwise manufactured" in paragraph 114 of the present law, and we think the reasonable inference is that Congress may be presumed to have had the cases above cited before it, and the new words in paragraph 114 were inserted to remove all possible doubt as to the classification of such articles.

In *Joe Y. Hirai* v. *United States, supra*, it was held that pieces of dressed sandstone used for making Japanese lanterns were classifiable under paragraph 235 of the Tariff Act of 1922 as sandstone, hewn, dressed, or polished, or otherwise manufactured. The court cited the *Gray Bros.* case, stating:

In the tariff revision of 1922 as finally enacted there is no change in the language of paragraph 235 from that of paragraph 114 of the act of 1909.

*Cannell & Chaffin, Inc.* v. *United States, supra*, involved stone statuary and stone works, which were held properly classified under paragraph 235 of the Tariff Act of 1922.

However, there is another line of cases which holds that when stone, although it may have been monumental or building stone, is cut into the form of an article or is adapted to a use other than that of monumental or building stone, it has passed beyond the stage of monumental or building stone, or is unsuitable for such use, and is, therefore, not classifiable under paragraph 234 of the Tariff Act of 1930, or its predecessors, as stone, suitable for use as monumental or building stone. *United States* v. *Vantine, supra*; *Manufacturers' Paper Co.* v. *United States*, 3 Ct. Cust. Appls. 72, T.D. 32353; *United States* v. *Manufacturers' Paper* Co., 4 Ct. Cust. Appls. 110, T.D. 33390; *P. H. Petry Co.* v. *United States*, 43 Treas. Dec. 663, Abstract 45830; *Hudson Forwarding & Shipping Co.* v. *United States*, 63 Treas. Dec. 910, T.D. 46419; *K. M. Kubierschky* v. *United States*, 5 Cust. Ct. 143, C.D. 386.

In *United States* v. *Vantine, supra*, it was held that certain Japanese stone lanterns were completed manufactured articles, brought

here in separate pieces for convenience of shipment; that they were made out of granite, hewn or dressed, but had passed out of the class of building or monumental stone and were properly dutiable as unenumerated manufactured articles under section 6 of the Tariff Act of 1897.

In *Manufacturers' Paper Co.* v. *United States, supra,* it was held that dressed lava stones of various sizes, designed to be fitted into iron drums, for use in papermills, were not classifiable as monumental or building stone, on the ground that they were not fitted for such use and were adapted to another and distinct use. The court referred to the holding in the *Vantine* case, *supra,* and quoted the following from *Austin* v. *United States,* 1 Ct. Cust. Appls. 510, T.D. 31532:

> When such stone, although it formerly may have been monumental or building stone, is cut into the form of an article like a stone lantern, used as an ornamental garden lantern, it is no longer suitable for building purposes or for monumental stone.

In a case arising under the Tariff Act of 1930, *Hudson Forwarding & Shipping Co.* v. *United States, supra,* it was held that benches and wall fountains, composed of limestone, were properly dutiable under paragraph 214 as articles, composed in chief value of earthy or mineral substances, decorated. The court said (p. 912):

> The seats and fountains here involved are unquestionably manufactured articles which in their finished state have a new name, character, and use different from either of the materials of which they are composed. * * * It follows, therefore, that the collector's classification of these articles under paragraph 234(c) was erroneous and without legal authority.
>
> *     *     *     *     *     *     *
>
> It is hardly to be conceived that anyone would seriously contend that as imported the stone parts of these articles were suitable for use as monumental or building stone or that such parts were still limestone manufactured, it being evident that they have passed beyond that stage. * * *

In *K. M. Kubierschky* v. *United States, supra,* it was held that granite stones, shaped, cut, bored, and fitted for no other use than assembly into a bromine tower in a chemical factory, were classifiable under paragraph 214 as articles, composed wholly or in chief value of earthy or mineral substances, not decorated. The court said (p. 145):

> * * * The tower itself is not a building nor is it a part of a building, as was the chimney in the *Grasselli* case, *supra,* and it is a structure only insofar as any large piece of apparatus is necessarily a structure. It was fashioned out of granite not for its structural qualities, but for its acid-proof qualities.
>
> For the foregoing resaons [*sic*] the granite as imported was not suitable for use as building stone, but was "adapted for another and distinct use," as was held in *Manufacturers' Paper Co.* v. *United States,* 3 Ct. Cust. Appls. 72, T.D. 32353, and is not dutiable as building stone. * * *

It is to be noted that *Gray Bros. et al.* v. *United States, supra,* involved paragraph 114 of the Tariff Act of 1909 which provided for—

Freestone, granite, sandstone, limestone, and all other monumental or building stone, * * * not specially provided for in this section, hewn, dressed, or polished, or otherwise manufactured, * * *.

The Tariff Act of 1913, however, provided, in paragraph 99, for "Freestone, granite, sandstone, limestone, lava, and all other stone *suitable for use as monumental or building stone*." [Emphasis supplied.] This language is also found in the Tariff Acts of 1922 and 1930. Therefore, the court's statement in *Joe Y. Hirai* v. *United States, supra,* that there had been no change in language is erroneous. In fact, the change in language is decidedly significant.

Plaintiffs point out, in their brief, that the *Hirai* case and *Cannell & Chaffin, Inc.* v. *United States, supra,* were cited in the Summary of Tariff Information, 1929, and claim that that indicates a legislative ratification of those decisions. However, it is to be noted that the *Hirai* case refers only to pieces of dressed sandstone and does not establish whether or not they were so far advanced as not to be suitable for use as building stone. Furthermore, in another publication which was before Congress at the time of the enactment of the Tariff Act of 1930, Memorandum of Court Decisions Affecting Tariff Act of 1922, it is stated (p. 14) :

In the case of *Canadian Pacific Railway Co.* v. *United States*, T.D. 43071, the Customs Court held that certain stones for grinding wood into pulp were not dutiable as sandstone under paragraph 235 because "they were not suitable for use as monumental or building stone," but were dutiable as grindstones at $1.75 per ton under paragraph 236.

If paragraph 235 was not intended to be limited to freestone, granite, sandstone, limestone and lava which are suitable only for use as monumental or building stone, the provision should be amended. If the word "other" in the provision "all other stone" was eliminated, it is believed the meaning of the provision would be changed.

Since no such change was made in the Tariff Act of 1930, it is evident that Congress agreed with the construction limiting the provision to stone, suitable for use as monumental or building stone.

An examination of the exhibits involved in the case before us shows clearly that the merchandise has been advanced beyond the stage of monumental or building stone and has been fashioned into pieces which are adapted only for use as stone lanterns. It is not suitable for use as building stone, but has been adapted for a new and distinct use. It is, therefore, not properly dutiable under paragraph 234 of the Tariff Act of 1930, as modified, as granite or sandstone, suitable for use as monumental or building stone, hewn, dressed, polished, or otherwise manufactured.

There is no doubt that the merchandise at bar consists of articles composed wholly or in part of earthy or mineral substances. *K. M. Kubierschky* v. *United States, supra.* Plaintiffs' alternative claim is

that if the imported merchandise is classifiable as such, under paragraph 214, as modified, it is dutiable under the provision for such articles, not decorated, rather than under the provision for such articles, if decorated.

The general rule is that whether or not an article is "ornamented" or "decorated" is a question of fact to be determined with reference to the particular article before the court. *United States* v. *Mutual China Co. et al.*, 9 Ct. Cust. Appls. 232, T.D. 38202. It is the result produced upon the article, and not the method of production, which determines the classification. *United States* v. *Todd & Co.*, 11 Ct. Cust. Appls. 50, T.D. 38690. While it has been held that embroidering, embossing, printing, glazing, and dyeing may result in decorated articles, it has also been stated that not every minute appearance of ornamentation or decoration upon an article will make it an ornamented one. *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367; *Oscar Heyman & Co.* v. *United States*, 27 Treas. Dec. 316, T.D. 34844; *Emile Utard* v. *United States*, 27 Treas. Dec. 399, T.D. 34888; *United States* v. *Bernard, Judae & Co.*, 4 Ct. Cust. Appls. 403, T.D. 32841; *United States* v. *L. Straus & Co.*, 168 F. 569, 17 Treas. Dec. 266, T.D. 29648; *United States* v. *N. M. Albert Co. et al.*, 41 C.C.P.A. (Customs) 191, C.A.D. 549; *United States* v. *Mutual China Co. et al.*, *supra*.

The case last cited involves white earthenware articles, described by the court as follows (p. 233):

* * * Exhibit 1, cup with impression on the handle in the way of a line around the edge and a triangle below. Exhibit 2, cup with a raised line around the edge of the top broken with rough ridges. Exhibit 3, cup with a triangular depression on the bottom of the handle. * * * Exhibit 5, cup with small, scarcely discernible leaf spray raised on the cup at the bottom of the handle, and a wavy raised line around the base with raised lines leading from the same to the base. * * * The effects produced are done with the mold or a stylus and are so crude, irregular, and infinitesimal as to amount to but slight variations from smooth edges and surfaces.

The court held that these articles were not ornamented or decorated, stating (p. 234):

* * * Some thereof might be said to be fancifully fashioned, but in a degree far short of ornamentation or decoration. Certainly neither every deviated line nor undulated surface can be said to be an ornamentation or decoration, although pleasing to the eye.

In a more recent case, *International Lapidaries Co.* v. *United States*, 36 Cust. Ct. 230, C.D. 1780, this court held that synthetic rutile stone, cut, faceted, and polished, and apparently ready for use in a piece of jewelry, was not decorated, on the ground that the cutting, faceting, and polishing were necessary in order to create the jewel out of the raw material, and that no foreign material, such as dye, had been

added, nor had any process, such as embossing or engraving, been used to embellish the article with a design.

No foreign substance has been added to the merchandise involved in the instant case, nor do any of the pieces exhibit any ornamental carving of figures or designs. There is a slight recess or niche in the shaft of plaintiffs' exhibit 4, and the openings of the light chamber are recessed. Each particular piece had to be chiseled in order to create it, and it is evident that the stone has been fashioned with an eye to making a complete artistic stone lantern and that the shaping of the roof portion, for example, and the openings in the light chamber were necessary for this purpose. The witness Hirano pointed out that chiseling was the only way in which the lanterns could be produced and that it would be farfetched to say that such chiseling constituted decoration. It was his opinion that the articles were not decorated and that their design related to their use.

According to various authorities on Japanese gardens,[1] stone lanterns were first used in shrines and temples in Japan and each piece had a symbolic meaning connected with Buddhism. Subsequently, stone lanterns were used in gardens to light pathways and to serve as ornaments fitting into the general landscape. "The tea masters at first took old lanterns from neglected temples, their mossy, weatherbeaten appearance harmonizing perfectly with the tea spirit."[2] Old temple lanterns were copied and new ones designed in various shapes, some having fewer than the conventional five or six pieces. The snow-viewing type is designed to fit into open situations where the snow will fall directly upon it; others are used as ornaments beside a pool, forming part of a rocky beach, or are planned to fit in with massive stonework. The witness Hirano testified:

> The Japanese garden is a thing of great beauty in design in the materials that are used. Naturally, the basic soil and the stones of course are wonderful; they are wonderful specimens, and the planting, and then to finish it off, we have—we must have a stone garden lantern in its proper environment to tie up the whole garden to make it complete.

It is evident that stone lanterns are artistic and are ornaments designed to fit into a special type of landscape or garden. However, the particular lanterns here involved are not themselves decorated since they have no embellishments carved or painted upon them nor has anything been added to the stones once they were chiseled into the shapes desired. While they may be said to be fancifully fashioned, they are not decorated or ornamented. We do not think the slight recessing on the shaft and on the light chamber of plaintiffs' exhibit 4 is sufficient to make that article a decorated one.

[1] Tsuyoshi Tamura, *Art of the Landscape Garden in Japan*; Loraine E. Kuck, *The Art of Japanese Gardens*; Samuel Newsom, *A Thousand Years of Japanese Gardens.*
[2] Kuck, op. cit., p. 197.

We hold, therefore, that the particular stone lanterns involved herein are not decorated and are properly dutiable at 15 per centum ad valorem under paragraph 214 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as articles, composed of earthy or mineral substances, not specially provided for, not decorated.

To that extent, the protests are sustained. As to all other items and in all other respects, the protests are overruled. Judgment will be rendered accordingly.