(C.D. 4108)

ROBERT SEIBERT
(MRS. ROBERT SEIBERT) } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 27, 1970)

Plaintiff not represented by counsel.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum* and *Glenn E. Harris*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

LANDIS, Judge: This case involves the somewhat awkward situation of a husband and wife returning from Japan to the United States with four nominal "stone lanterns", which they believed would be free of duty as original works of art, executed in the tradition of the free fine arts, only to have customs assess the stone lanterns with duty at 8 per centum ad valorem under TSUS (Tariff Schedules of the United States) item 513.51 as stone statuary and sculptures not specially provided for, the professional productions of sculptors only. TSUS item 513.51 embraces stone sculptures which, under paragraph 1547(a)(2) of the Tariff Act of 1930, were considered works of art [1] of genuine beauty, but not of the rare and special genius Congress sought to protect in providing for free entry of original works of art. *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, 34, C.A.D. 458 (1951).

Sculptures and statuary that are works of the free fine arts [2] are provided for in subpart A of part 11, schedule 7, TSUS item 765.15, as follows:

---

[1] Tariff Classification Study, Schedule 5, page 23.
[2] Tariff Classification Study, Schedule 7, page 419.

765.15 Original sculptures and statuary (including the first 10 castings, replicas, or reproductions made from a sculptor's original work or model with or without a change in scale and whether or not the sculptor is alive at the time the castings, replicas, or reproductions are completed), all the foregoing made in any form from any materal as the professional productions of sculptors only, whether in round or in relief, and whether cut, carved, or otherwise wrought by hand or cast_____     Free

On trial at Houston, Texas, defendant moved that the case be dismissed on the ground that the protest was untimely and otherwise insufficient to give this court jurisdiction under section 514 of the Tariff Act of 1930, 19 U.S.C., section 1514. Decision on this motion was reserved for this division of the court. At defendant's suggestion, the trial judge ordered defendant to file its brief first in order of time presumably to minimize the disadvantage to plaintiff appearing *pro se*, that is representing himself without counsel. As this record attests, it is obviously impossible to eliminate all the disadvantages built into a situation where a plaintiff elects to appear *pro se* against an adversary represented by professional counsel.

In support of the motion defendant relies on the official papers, the testimony of Mr. and Mrs. Seibert; Harry G. Kelly, district director of customs at Houston; and exhibits A through G. The pertinent facts appearing of record are as follows:

The stone lanterns were entered at Houston, Texas on December 29, 1966, where informal customs entry (customs Form 5119–A) No. 1138289 was prepared and duty in the amount of $25.84 paid on December 30, 1966. Plaintiff's receipted copy of the informal entry bears the following printed notice to the importer:

> Liquidation of amount of duties and taxes, if any, due on this entry is effective on date of payment of this amount. For importer's right to protest or Government's right to redetermine this amount, see sections 514 and 520, T.A. 1930, and sections 16.12 and 16.14, Customs Regulations. *Protest must be accompanied by this receipt or a photostat copy thereof.* [Italics quoted] [Exhibit G.]

On January 3, 1967, Mrs. Seibert wrote a letter to the regional commissioner of customs at Houston to which he replied on January 6, 1967, as follows:

> Your letter of January 3, 1967, does not furnish the necessary information to allow this office to locate the entry documents covering the importation of your sculptured stone lanterns.

Please advise the entry number, name of vessel, date of arrival and dock where the shipment was examined and cleared.

This office, after review of the entry documents, will advise you further in the matter. [Exhibit C.]

On March 15, 1967, the regional commissioner at Houston wrote Mrs. Seibert the following letter:

Mrs. Robert Seibert
5223 Valkeith Drive
Houston, Texas 70035

Dear Mrs. Seibert:

Your letter of January 3, 1967, and subsequent correpondence as well as Houston Informal Entry 1138289 of December 29, 1966, covering the importation of fifteen cases of stoneware representing three Japanese stone lanterns has been reviewed by this office.

The customs inspector who processed the shipment on the waterfront stated that your husband advised "* * * I did not like his models, so I drew some pictures of the type and size that I wanted and he made them for me from my pictures and specifications."

The Bureau of Customs has defined "fine arts" as "those in which the artist creating the object is able to put something of his own into the work." Further, the Bureau has stated that the requirements for "fine arts" are "originality of conception, execution and design." Your husband's statement to the customs inspector removes these lanterns from under this criteria as they are not the original conception and design of the sculptor.

Classification of Japanese stone lanterns has been the subject of former Bureau rulings, and it has been established that they are dutiable under Item 513.81, T.S.U.S.A. at 15%.

In reality an additional amount of duty should have been collected. The District Director, Houston, Texas, would be receptive to a tender of $22.61 as withheld duties from you.

Sincerely yours,
[Signed]
CLEBURNE MAIER
Regional Commissioner

[Exhibit D.]

On August 11, 1967, Mrs. Seibert wrote the district director at Houston a letter which customs chose to treat as a protest, as follows:

Gentlemen:

I am paying, under protest, the additional assessment of $22.61 as imposed by your office for stone lanterns purchased in Japan as a result of a trip I made there in September 1966.

Enclosed is a check for that amount. As I have already advised your office, this amount and a previous amount paid earlier are both paid under protest and that I wish to appear in person before the travelling U.S. Court which handles such matters.

I would appreciate your office advising me of the date for such an appeal. Thank you for your anticipated cooperation.

Sincerely yours,
[Signed Mrs. Robert Seibert]

Encl. 1 personal check
Encl. 5 copies of this letter as requested

Mr. Seibert, called by defendant to testify at the trial, stated that when he went to the Houston dock to enter and take delivery of the stone lanterns, he told the customs officer that he thought the stone lanterns could be imported duty free as works of art; that he was told they could not; that he next advised the customs officer that he would pay the duty and "would like to protest"; that the customs officer prepared the informal entry and Mr. Seibert signed it in his wife's presence; that the January 3, 1967 letter to the regional commissioner protested the duty assessment, and that he did not retain a copy of the letter.

Mrs. Seibert, called by defendant to testify, stated that the first thing she and her husband inquired about when they paid the duty was how they could protest the payment; that she subsequently called the office of the regional commissioner and was advised to send a letter of protest; that she wrote the January 3, 1967 letter protesting the duty payment; that she could not recall exactly what she wrote in 1967 because it was now more than two years ago; that she knew she "specifically * * * objected to having to pay duty on these ishitoros [stone lanterns] because they came in, under our impression, under the works of art law, and that they should have been duty free, and objected to the fact that the men at the docks felt that they were not works of art; that they were stoneware, and I wanted to know what the procedure was for protesting."

Mr. Harry G. Kelly, district director of customs at Houston, called by defendant to testify, stated that a search of the records in his office failed to turn up the January 3, 1967 letter written by Mrs. Seibert, and that letters of protest to the regional commissioner are, in regular practice, forwarded to his office.

An informal customs entry, as the printed notice to the importer states, is liquidated on the date duty is paid, in this case, December 30, 1966. *Lyons Export & Import, Inc.* v. *United States*, 59 Cust. Ct. 333, C.D. 3155 (1967). Defendant argues that Mrs. Seibert's letter of August 11, 1967 is untimely under section 514, *supra*, because it was filed more than sixty days after liquidation, and fails to specify the TSUS item provision under which the stone lanterns were claimed duty free. Whether the August 11, 1967 letter was a timely protest, we need not decide. We are of the opinion that, on this record, the January 3, 1967 letter was a viable timely protest which, in the light

of the regional commissioner's letter of March 15, 1967, should have been transmitted, with the entry, to this court under section 515 of the Tariff Act of 1930, 19 U.S.C., section 1515, and deny the motion to dismiss.

The fact that the January 3 letter in protest is not available is not fatal. *B. R. Anderson & Co.* v. *United States*, 47 Cust. Ct. 215, 219, C.D. 2304, 201 F. Supp. 319 (1961). That the regional commissioner understood the source of plaintiff's claim for duty free entry of the stone lanterns as works of art under TSUS item 765.15 is obvious from the regional commissioner's letter of March 15, 1967. *How-Tex Peanut Company, Inc.* v. *United States*, 54 Cust. Ct. 316, Abstract 69066 (1965). The failure to furnish the information necessary to allow the regional commissioner to immediately locate the relevant entry document was an inconvenience which, in the context of the entry transaction, we do not believe should affect the validity of the January 3 protest. *International Forwarding Co.* v. *United States*, 36 Treas. Dec. 294, T.D. 37972 (1919). Mrs. Seibert's testimony that, in the letter, she asked the procedure for protesting was an irrelevant question if, as we hold, the letter was otherwise a legally sufficient protest. Cf. *Allen Forwarding Co.* v. *United States*, 65 Treas. Dec. 1457, Abstract 27728 (1934).

We shall now proceed to a consideration of the merits of plaintiff's protest. Upon a careful examination of the evidence elicited at the trial, we are unable to find any proof that these stone lanterns (exhibit 1) are the execution of the rare and special genius usually attributed to works of the free fine arts, cf. *H. H. Elder & Co. et al.* v. *United States*, 64 Cust. Ct. 182, C.D. 3979 (1970). We have no alternative, therefore, but to overrule the protest. As to the classification of the stone lanterns in the case at bar under TSUS item 513.51, compare the classification of the stone lanterns in *Otagiri Mercantile Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 184, C.D. 2173 (1960).

The protest is overruled. Judgment will be entered accordingly.